United States Courts
Southern District of Texas
FILED
March 05, 2026
Nathan Ochsner, Clerk of Court

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>**JOSEPH ROY GOMEZ,**<br>**a.k.a. "TEQUILA,"**<br><br>　　　　　　Defendant. | **Case No. 4:23-cr-00422-6-S**<br><br>**COUNT ONE**<br>*Conspiracy to Conduct the Affairs of an Enterprise through a Pattern of Racketeering Activity*<br>18 U.S.C. §§ 1962(d) and 1963(a)<br>NMT Life Imprisonment<br>NMT $250,000 Fine<br>NMT Five Years' Supervised Release<br>Class A Felony<br><br>**COUNT TWO**<br>*Assault in Aid of Racketeering Activity*<br>18 U.S.C. §§ 1959(a)(3) and 2<br>NMT 20 Years' Imprisonment<br>NMT $250,000 Fine<br>NMT Three Years' Supervised Release<br>Class C Felony<br><br>**COUNT THREE**<br>*Using, Carrying, Brandishing, Discharging, and Possessing a Firearm During and in Relation to a Crime of Violence*<br>18 U.S.C. §§ 924(c)(1)(A)(iii) and 2<br>NLT 10 Years' Imprisonment (*Consecutive*)<br>NMT Life Imprisonment<br>NMT $250,000 Fine<br>NMT Five Years' Supervised Release<br>Class A Felony<br><br>**FORFEITURE ALLEGATION**<br>18 U.S.C. §§ 1963 and 924(d)<br><br>$100 Special Assessment (Each Count) |

1

# INFORMATION

**THE UNITED STATES ATTORNEY CHARGES THAT:**

## COUNT ONE
*(Conspiracy to Conduct the Affairs of an Enterprise through a Pattern of Racketeering Activity)*

### The Enterprise

1. At all times relevant to this Information, the defendant,

**JOSEPH ROY GOMEZ, a.k.a. "TEQUILA,"**

together with others known and unknown, was a member and associate of the Homietos Outlaw Motorcycle Gang, an organization engaged in, among other crimes, murder, robbery, narcotics distribution, and witness intimidation.

2. The Homietos Outlaw Motorcycle Gang, including its leaders, members, associates, and prospects constituted an "enterprise," as defined in Title 18, United States Code, Sections 1961(4) and 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce ("Homietos OMG," "Homietos," or "enterprise"). The enterprise constituted an ongoing organization whose leaders, members, associates, and prospects, functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

3. Homietos members and associates are located throughout the United States, but the gang was formed, and is primarily based in, the state of Texas. At all times relevant to this Information, the Homietos OMG operated in the Southern District of Texas and elsewhere.

### Structure and Operation of the Homietos

4. Within the Texas Department of Criminal Justice ("TDCJ"), a prison gang known as "Tango Blast" developed and operated through hometown-based "cliques," including the

"Houstone" (Houston) clique. On or about September 21, 2015, former TDCJ inmates associated with the Houstone clique founded the Homietos after obtaining permission from the Bandidos Outlaw Motorcycle Gang (OMG) to initially establish the group. At the time, the Bandidos were the dominate OMG in Texas, and failure to secure its permission before starting a separate motorcycle club resulted in retaliation. Over time, the Homietos rejected its subordinate role as a "support club" to the Bandidos, wherein the Homietos were expected to attend Bandidos OMG events and assist the Bandidos OMG as ordered. The Homietos then pursued an independent identity and aligned with the Brothers EAST Outlaw Motorcycle Gang ("B*EAST"). On or about March 31, 2017, the Homietos and B*EAST separated from the Bandidos umbrella and formed an association identified as the "Red and Grey Nation," which became involved in a violent conflict with the Bandidos and the Bandidos' support clubs. Following this separation, the Homietos expanded its presence beyond Houston and the State of Texas, establishing chapters across multiple former Tango Blast cliques and extending into Oklahoma ("OKC"), Kansas City, Missouri ("Killa City"), and Nebraska. During this expansion, the Homietos broadened membership eligibility by admitting non-Hispanic members, including white individuals, and no longer required prior affiliation with Tango Blast.

5.      Homietos recruited members and associates, many of whom were convicted felons and current or former members of Houstone Tango Blast. Within Homietos, the primary unit of organization was known as a "chapter," which typically included five to 20 members and operated in a specific geographic location. Each chapter was run by the senior leader, who was designated the "Chapter President." Other members and associates of a chapter took their orders from the "Chapter President" or other elected leaders. The leaders of the respective chapters attended larger general meetings to manage Homietos operations on a regional level.

6. Individuals who associated and committed crimes with the Homietos were called "hang arounds." Individuals seeking and attempting to join the Homietos were called "prospects." Prospects seeking to join the Homietos had to be sponsored by a Homietos member and undergo a probationary period, referred to as "prospect status," during which they were required to attend events and potentially commit crimes on behalf of the Homietos to achieve trust from, and prove their loyalty to, the Homietos. After serving in an approximate six-month prospect status, Homietos prospects had to complete an initiation process in order to become a full or "patched" member of the Homietos. During this time, prospects were called upon to engage in criminal conduct. Because they do not wear a "cut," that is, a biker's vest worn by "patched members," prospects were often called upon to engage in conduct to evade detection by law enforcement, including carrying firearms for members of the Homietos who were convicted felons.

7. Homietos members were required to attend local chapter meetings. A member was expected to pay dues to the local chapter. The money was used to finance chapter activities and to fund the Homietos enterprise on a national level.

8. To promote their identity, Homietos members wore "cuts" displaying the Homietos "patches" and other insignia. Homietos associates wore T-shirts and other clothing displaying the Homietos insignia. Homietos members also obtained tattoos with the Homietos insignia.

9. To protect the power, reputation, and territory of the Homietos, members and associates were required to commit acts of violence, threats of violence, and intimidation. These acts of violence included assault, often with deadly weapons including firearms. Homietos members and associates maintained and enhanced their status in Homietos by participating in such violent acts.

10. Prospects of the enterprise were indoctrinated into the Homietos rules, which were strictly enforced. The rules were written and were required to be memorized by prospects.

### **Purposes of the Enterprise**

11. The purposes of the Homietos included, but were not limited to, the following:

   a. Preserving, protecting, and enhancing the power, territory, reputation and profits of the Homietos enterprise through the use of intimidation, destruction of property, violence, and threats of violence;

   b. Promoting and enhancing the Homietos enterprise and its members' and associates' activities, including, but not limited to, the commission of acts involving murder and robbery, particularly the forcible taking of property of rival motorcycle organizations, which enhanced the status and prestige of the enterprise relative to other motorcycle clubs;

   c. Keeping victims, witnesses, potential informants, and the public at large in fear of the Homietos enterprise, and in fear of its members and associates, through intimidation, violence, and threats of violence;

   d. Attacking and retaliating against rival gang members through acts of violence, including, but not limited to, acts involving murder;

   e. Providing financial support and information to Homietos members and associates, including those incarcerated;

   f. Providing assistance to members and associates who have committed crimes on behalf of the Homietos enterprise;

   g. Ensuring discipline within the enterprise and compliance with enterprise rules by Homietos members and associates through threats of violence and acts of violence;

h. Enriching the members and associates of the enterprise through criminal activity, including robbery, extortion, and narcotics trafficking

i. Hindering, obstructing, and preventing law enforcement officers from identifying participants in the enterprise's criminal activity, from apprehending the perpetrators of those crimes, and from successfully prosecuting and punishing the offenders.

**Means and Methods of the Enterprise**

12. Among the means and methods by which members and associates of the Homietos conducted, and participated in the conduct of, the affairs of the enterprise included, but were not limited to, the following:

a. Leaders of the enterprise directed, sanctioned, approved, and permitted other members and associates of the enterprise to carry out criminal acts on behalf of the enterprise and in furtherance of the enterprise's goals and interests.

b. Members and associates of the enterprise committed, conspired to commit, and threatened to commit acts of violence, including acts involving murder, robbery, and intimidation to protect and expand the enterprise's power, territory, reputation, and property, and to enhance its prestige, reputation, and position in the community;

c. Members and associates of the Homietos enterprise promoted a climate of fear through intimidation, violence, and threats of violence;

d. Members and associates of the Homietos enterprise used violence, threats of violence, and intimidation to discipline and punish members and associates perceived to have been disloyal and to have violated enterprise rules;

  e. Members and associates of the Homietos enterprise used and threatened to use physical violence against various individuals, including rival motorcycle organization members and associates;

  f. Members and associates of the Homietos enterprise committed and conspired to commit robbery, including robbery of property belonging to rival motorcycle organizations;

  g. Members and associates of the Homietos enterprise traveled in interstate commerce, and used facilities in interstate commerce, to further the goals of the enterprise, including planning and commission of acts of violence;

  h. Members and associates of the Homietos enterprise attended meetings to discuss, among other things: the structure and organization of the Homietos; criminal acts committed against rival gang members and others, as well as criminal acts committed against the Homietos by other rival gangs; disciplining members and associates who had violated rules; the identities of individuals suspected of cooperating with law enforcement, and proposed actions to be taken against them; plans regarding the commission of future crimes and ways to conceal said crimes; and to vote or elect new leaders in the Homietos hierarchy;

  i. Members and associates of the Homietos enterprise rewarded criminal conduct in the form of "patches" to be worn on members "cuts," the vest worn by members of the Homietos motorcycle gang; and

  j. Members and associates of the Homietos enterprise were forbidden from cooperating with law enforcement. If a member or associate was believed to be cooperating

with law enforcement, that member or associate was subject to assault and/or expulsion from the enterprise.

## The Racketeering Conspiracy

13. Beginning on an unknown date, but no later than in or about 2015 and continuing through on or about the date of this Information, in the Southern District of Texas, and elsewhere, the defendant,

**JOSEPH ROY GOMEZ, a.k.a. "TEQUILA,"**

being a person employed by and associated with the Homietos OMG, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, together with others known and unknown, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5), which pattern of racketeering consisted of:

    a. multiple acts involving:

        i. murder, chargeable under Texas Penal Code, Sections 19.02, 7.01, 7.02, 15.01, and 15.02; and

        ii. robbery, chargeable under Texas Penal Code, Sections 29.02, 29.03, 7.01, 7.02, 15.01, and 15.02;

    b. multiple offenses involving trafficking in controlled substances, in violation of Title 21, United States Code, Sections 841, 843, and 846; and

    c. multiple acts indictable under:

        i. Title 18, United States Code, Section 1512 (relating to tampering with a witness, victim, or an informant); and

    ii. Title 18, United States Code, Section 1513 (relating to retaliating against a witness, victim, or an informant).

14. It was further part of the conspiracy that the defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

**Overt Acts**

15. In furtherance of the racketeering conspiracy, and to affect the object thereof, the defendant, together with others known and unknown, committed, and caused to be committed, various overt acts within the Southern District of Texas and elsewhere, including but not limited to, the following:

 a. On or about September 19, 2020, **JOSEPH ROY GOMEZ**, along with others known and unknown, assaulted D.H., a member of the Tattoo Crue motorcycle club with various objects, including brass knuckles.

 b. On or about September 19, 2020, **JOSEPH ROY GOMEZ**, along with others known and unknown, assaulted D.T.L., a member of the Tattoo Crue motorcycle club with various objects, including brass knuckles.

 c. On or about September 19, 2020, **JOSEPH ROY GOMEZ**, along with others known and unknown, assaulted D.R.L., a member of the Tattoo Crue motorcycle club with various objects, including brass knuckles.

 d. On or about September 19, 2020, **JOSEPH ROY GOMEZ**, along with others known and unknown, robbed D.H. of a wallet, clothing, United States currency, motorcycle keys, and a firearm.

e.  On or about September 19, 2020, **JOSEPH ROY GOMEZ**, along with others known and unknown, robbed D.T.L. of a wallet, clothing, United States currency, motorcycle keys, and a firearm.

f.  On or about September 19, 2020, **JOSEPH ROY GOMEZ**, along with others known and unknown, robbed D.R.L. of a wallet, clothing, United States currency, motorcycle keys, and a firearm.

g.  On or about February 23, 2020, **JOSEPH ROY GOMEZ**, along with others known and unknown, attempted to murder two suspected members of a rival motorcycle club, by shooting at them with a firearm.

h.  On or about April 14, 2023, **JOSEPH ROY GOMEZ**, along with other known and unknown, travelled with members and associates of the Homietos OMG while carrying firearms and wearing Homietos-affiliated clothing. When the group encountered suspected members of the rival Bandidos OMG on the highway, **JOSEPH ROY GOMEZ** brandished a firearm at the individuals and known and unknown members and associates of the Homietos shot at them, killing one.

i.  On or about April 14, 2023, after the above-described murder, **JOSEPH ROY GOMEZ** and other Homietos members and associates stopped at a store but then resumed travel in a single vehicle on the highway. When the group encountered three additional suspected members of the Bandido OMGs, known and unknown members and associates of the Homietos shot at the three individuals, killing two of the individuals and injuring the third.

j.  On or about April 14, 2023, following the above-described shootings, **JOSEPH ROY GOMEZ**, along with other known and unknown members and associates of the

Homietos, disassembled and disposed of a firearm that had been used in the murder of a rival motorcycle gang member.

k.     On or about April 14, 2023, following the above-described shootings, **JOSEPH ROY GOMEZ**, along with other known and unknown members and associates of the Homietos, disposed of a shell casing that had been used in the murder of a rival motorcycle gang member.

l.     On or about April 14, 2023, **JOSEPH ROY GOMEZ**, along with others known and unknown, attended a meeting where members of the Homietos OMG discussed keeping secret information about the murders members of the gang had committed that day.

## Notice of Special Sentencing Factors

16.    As part of his agreement to conduct and participate in the conduct of the affairs of the Homietos OMG enterprise through a pattern of racketeering activity, the defendant committed the following acts:

a.     On or about April 14, 2023, in the Southern District of Texas, **JOSEPH ROY GOMEZ**, along with others known and unknown to the United States Attorney, while aiding and abetting each other, intentionally and knowingly caused the death of W.K., in violation of Texas Penal Code Sections 19.02(b)(1), 7.01, and 7.02(a)(2).

b.     On or about April 14, 2023, in the Southern District of Texas, **JOSEPH ROY GOMEZ**, along with others known and unknown, while aiding and abetting each other, intentionally and knowingly caused the deaths of A.C. and R.S., in violation of Texas Penal Code Sections 19.02(b)(1), 7.01, and 7.02(a)(2).

All in violation of Title 18, United States Code, Section 1962(d).

## COUNT TWO
*(Assault with a Dangerous Weapon in Aid of Racketeering and Assault Resulting in Serious Bodily Injury in Aid of Racketeering)*

17. Paragraphs one through twelve of this Information are incorporated and realleged as if fully set forth herein.

18. The Homietos OMG enterprise, through its leaders, members, associates, and prospects, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving murder, chargeable under Texas Penal Code, Sections 19.02, 7.01, 7.02, 15.01, and 15.02; acts involving robbery, chargeable under Texas Penal Code, Sections 29.02, 29.03, 7.01, 7.02, 15.01, and 15.02; and offenses involving trafficking in controlled substances, in violation of Title 21, United States Code, Sections 841, 843, and 846.

19. On or about September 19, 2020, in the Southern District of Texas, the defendant,

**JOSEPH ROY GOMEZ, a.k.a. "TEQUILA,"**

and others known and unknown, while aiding and abetting each other, for the purpose of gaining entrance to, and maintaining and increasing position in, the Homietos OMG, an enterprise engaged in racketeering activity, did intentionally and knowingly assault D.T.L., D.R.L., and D.H. with a dangerous weapon, in violation of Texas Penal Code, Sections 22.01, 22.02(a)(2), 7.01 and 7.02, and did intentionally and knowingly assault D.T.L. resulting in serious bodily injury to D.T.L., in violation of Texas Penal Code, Sections 22.01, 22.02(a)(1), 7.01 and 7.02.

All in violation of Title 18, United States Code, Sections 1959(a)(3), and 2.

## COUNT THREE
*(Using, Carrying, Brandishing, and Discharging a Firearm During and In Relation to a Crime of Violence)*

20. On or about September 19, 2020, in the Southern District of Texas and elsewhere, the defendant,

12

**JOSEPH ROY GOMEZ, a.k.a. "TEQUILA,"**

with others known and unknown to the United States Attorney, while aiding and abetting each other, did knowingly and intentionally use, carry, brandish, and discharge a firearm during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, that is, assault with a dangerous weapon in aid of racketeering activity and assault resulting in serious bodily injury in aid of racketeering, in violation of Title 18, United States Code, Sections 1959(a)(3) and 2, as alleged in Count Two of this Information, and knowingly possessed a firearm in furtherance of such crime.

All in violation of Title 18, United States Code, Section 924(c)(1)(A)(i)–(iii) and 2.

## FORFEITURE ALLEGATION

21. The allegations contained in Count One of this Information are re-alleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963 and Title 21 United States Code, Section 853. Upon conviction of the offense charged in Count One of this Information, the defendant,

**JOSEPH ROY GOMEZ,**

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 1963 and Federal Rule of Criminal Procedure 32.2:

    1.1. any interest the defendant acquired or maintained in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

    1.2. any interest in, security of, claim against, or property or contractual rights of any kind which afford a source of influence over, the enterprise named and described

herein, which the defendant established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962, which interests, securities, claims, and rights are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(2); and

    1.3.    any property constituting and derived from, proceeds obtained, directly and indirectly, from aforesaid racketeering activity, in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

22.    The interests of the defendant subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963 include the amount of gross proceeds received by the defendant derived from racketeering activities as alleged in Count One of this Information.

### Substitute Assets

23.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    1.1.    cannot be located upon the exercise of due diligence;

    1.2.    has been transferred or sold to, or deposited with, a third party;

    1.3.    has been placed beyond the jurisdiction of the Court;

    1.4.    has been substantially diminished in value; or

    1.5.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

All in accordance with Title 18, United States Code, Section 1963.

24. Moreover, the allegations contained in Count One of this Information are re-alleged and incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 924(d), and Title 28, United States Code, Section 2461(c).

25. Upon conviction of the offense in violation of Title 18, United States Code, Section 924(c) set forth in Count Two of this Information, the defendant,

**JOSEPH ROY GOMEZ,**

shall forfeit to the United States pursuant to Title 18, United States Code, Section 924(d), and Title 28, United States Code, Section 2461(c), any firearms and ammunition involved or used in the commission of the offense.

All in accordance with Title 18, United States Code, Section 924(d); Title 28, United States Code, Section 2461(c); and Rule 32.2(a) of the Federal Rules of Criminal Procedure.

DATED: March 05, 2026
Houston, Texas

**NICHOLAS J. GANJEI**
United States Attorney
Southern District of Texas

*Keri Fuller*
Keri L. Fuller
Byron H. Black
Assistant United States Attorneys
Southern District of Texas

*Samuel B. Tonkin*
Samuel B. Tonkin
Trial Attorney
Violent Crime and Racketeering Section
U.S. Department of Justice